UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHRISTOPHER JOSEPH,

                    Plaintiff,

          - against -

NYC DEPARTMENT OF CORRECTIONS,
EMTC WARDEN S. BASTIAN, C.O.
DOUGLAS, and EMTC MEDICAL STAFF,

                    Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-1676 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Christopher Joseph, currently incarcerated at the Fishkill Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983") on March 25, 2020. Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the reasons contained herein, the New York City Department of Corrections ("NYC DOC") is dismissed as a defendant. The action may proceed against the remaining Defendants.

## BACKGROUND

Plaintiff alleges that while incarcerated at the Eric M. Taylor Center on Rikers Island, Corrections Officer ("C.O.") Douglas sexually and physically assaulted him on multiple occasions between April 1, 2019 and May 21, 2019. (Complaint ("Compl."), Dkt. 1, at 3–4.)[1] On or about April 1, 2019, C.O. Douglas came up behind Plaintiff, grabbed his buttocks, pushed him into the lockers, and grabbed his penis. (*Id.* at 3.) Plaintiff pushed C.O Douglas away, and in response, Douglas threatened to "get him seven years." (*Id.* at 4.) A couple days later, Plaintiff was again

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiff's non-conclusory, factual allegations. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

cornered by C.O. Douglas, who grabbed Plaintiff's buttocks and penis and rubbed his genitals against Plaintiff. (*Id.*) The next day, Plaintiff informed medical staff of the assaults and scratches on his posterior and genitals, and the pains in his neck, but they "refused to do anything." (*Id.*) The medical staff told Plaintiff that he "should be worried about retaliation." (*Id.*) Plaintiff informed Warden S. Bastian on or about April 15, 2019, and the Warden responded: "[You're] playing with fire; now go to work." (*Id.*) This abuse continued until about May 21, 2019. (*Id.*)

Plaintiff claims mental injuries as a result of these assaults. (*Id.* at 4–5.) He seeks a total of $545 million in damages. (*Id.* at 5.)

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Title 28 of the United States Code, § 1915A, requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of

the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief

may be granted or seeks monetary relief from a defendant who is immune from such relief."  28

U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Similarly, pursuant to

the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the

complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Plaintiff's claims for violations of his constitutional rights are cognizable under 42 U.S.C.

§ 1983, which provides procedures for redress for the deprivation of civil rights.  In order to

maintain a civil rights action under § 1983, a plaintiff must allege two essential elements.  First,

"the conduct complained of must have been committed by a person acting under color of state

law."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted); *see also Flynn v.

James*, 513 F. App'x 37, 39 (2d Cir. 2013) (summary order).  Second, "the conduct complained of

must have deprived a person of rights, privileges or immunities secured by the Constitution or laws

of the United States."  *Pitchell*, 13 F.3d at 547.  Further, "in order to establish a defendant's

individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's

personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*,

720 F.3d 133, 138 (2d Cir. 2013).  "Because vicarious liability is inapplicable to . . . § 1983 suits,

a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

## I.     New York City Department of Corrections

In this case, Plaintiff names the NYC DOC as a defendant.  Suits against City agencies

must be brought against the City of New York rather than against the agency itself.  *See* N.Y. City

Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law."); *Cano v. Cohen*, No. 18-CV-11550 (CM), 2019 WL 4933580, at *4 (S.D.N.Y. Oct. 4, 2019) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law." (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007))). Thus, Plaintiff's § 1983 claims against the NYC DOC are dismissed because the DOC is not an entity that may be sued.

However, a municipality can be liable under § 1983 if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019). Four types of practices may underly a § 1983 suit against a municipality:

> (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference.

*Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018) (internal quotation marks and citation omitted). "When plaintiffs do not allege an unconstitutional official policy, or an unconstitutional action ordered or ratified by an official policymaker, 'municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." *Id.* (quoting *Amnesty Am v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)). "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence

4

may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty*, 361 F.3d at 126 (internal quotation marks and citations omitted).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 192 (E.D.N.Y. 2014) (alteration omitted) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).  It "may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks and citations omitted).

"[E]ven a single action by a decisionmaker who possesses final authority to establish municipal policy with respect to the action ordered is sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983." *Amnesty*, 361 F.3d at 126 (internal quotation marks and citation omitted).  "The means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing, but the operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a conscious choice rather than mere negligence." *Pipitone*, 57 F. Supp. 3d at 192 (internal quotation marks, citation, and alteration omitted).

Plaintiff does not claim that any formal policy or custom of the city or the NYC DOC caused his assault.  Rather, he alleges facts that could give rise to the second type of *Monell* claim: one "based on the actions or decisions of a municipal official with final policymaking authority" who ratifies the constitutional violations of his subordinates.  *See Doe*, 2018 WL 3824133, at *8. Plaintiff claims that he informed Warden Bastian that C.O. Douglas had assaulted him, but that Warden Bastian told Plaintiff he was "playing with fire" and to return to work, after which C.O.

Douglas continued to abuse Plaintiff for approximately another month.  (Compl., Dkt. 1, at 4.)  As discussed *infra*, C.O. Douglas's conduct may rise to the level of a constitutional violation.  Because Plaintiff informed Warden Bastian of the ongoing abuse, Warden Bastian "had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious."  *Doe*, 2018 WL 3824133, at *8 (internal quotation marks omitted).  By failing to take any action in response to Plaintiff's claim, and telling Plaintiff that he was "playing with fire" in accusing C.O. Douglas, Warden Douglas did not demonstrate mere negligence, but instead made a "conscious choice" to ignore the ongoing abuse and to dissuade Plaintiff from pursuing his complaint.  *See Amnesty*, 361 F.3d at 126; *Pipitone,* 57 F. Supp. 3d at 192.  The Court finds Plaintiff's claims, accepted as true, adequately allege that Warden Bastian demonstrated deliberate indifference to an ongoing constitutional violation.

Plaintiff has not, however, pleaded facts sufficient to satisfy the other requirement for municipal liability, *i.e.*, that Warden Bastian was a "final policymaker."  *See Daniels v. City of New York*, No. 17-CV-9960 (LGS), 2019 WL 251511, at *6–7 (S.D.N.Y. Jan. 17, 2019).  "Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law."  *Graham v. City of New York*, No. 05-CV-5428 (CBA) (JMA), 2009 WL 909620, at *2 (E.D.N.Y. Mar. 31, 2009) (citing *Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000)).  "[I]t is Plaintiff's burden to establish that the municipal official whose conduct is in question represents an official policymaker involved with and responsible for promulgating municipal policy."  *Peterson v. City of New York*, No. 10-CV-7283, 2018 WL 5811432, at *6 (S.D.N.Y. Nov. 6, 2018).  "The official in question need not be a municipal policymaker for all purposes.  Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the municipality's business."  *Stern v. City of New York*, No. 12-

CV-5210 (NGG) (RER), 2015 WL 3827653, at *4 (E.D.N.Y. June 19, 2015) (internal quotation marks, citation, and emphasis omitted). Wardens are not necessarily policymakers such that their decisions can support municipal liability under *Monell*. *See, e.g.*, *Graham*, 2009 WL 909620, at *2 (finding that the record needed to be supplemented to determine whether wardens were policymakers). Plaintiff does not allege any facts about Warden Bastian's role at the Eric M. Taylor Center, nor any facts as to whether Warden Bastian was the final policymaking authority for complaints at the Center. Thus, even had Plaintiff sued the City rather than the NYC DOC, his claim against it would be dismissed for failure to state a claim for municipal liability.

## II.    Individual Defendants

Plaintiff advances specific claims against Defendants C.O. Douglas and Warden Bastian alleging their personal involvement, and these claims may proceed. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *see also Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

### A.    C.O. Douglas

Plaintiff's complaint does not name the constitutional rights he alleges were violated. (*See generally* Compl., Dkt. 1.) Nor does it indicate whether, at the time of the alleged assault, Plaintiff was a pre-trial detainee or had already been convicted. (*See generally id.*) If Plaintiff was already convicted at the time of the alleged conduct, his claims would be governed by the Eighth Amendment's protection against cruel and unusual punishment. *See Perez v. Ponte*, 236 F. Supp. 3d 590, 618 (E.D.N.Y. 2017) ("[T]he Second Circuit has found that 'sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment.'" (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997)), *report and recommendation adopted*, No. 16-CV-645 (JFB) (AKT), 2017 WL 1050109

(E.D.N.Y. Mar. 15, 2017).  If Plaintiff was a pre-trial detainee at the time of the incident, however, his claims of sexual abuse would instead be governed by the Due Process Clause of the Fourteenth Amendment, as "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (internal quotation marks, citations, and alterations omitted).  Because a detainee's rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *id.* at 29 (citation omitted), and alleged conduct that states a claim under the Eighth Amendment would therefore be sufficient to state a claim under the Due Process Clause, the Court conducts the Eighth Amendment analysis first. "The Second Circuit has held that '[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment.'" *Colon v. Annucci*, 344 F. Supp. 3d 612, 642 (S.D.N.Y. 2018) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015)).  Plaintiff alleges that C.O. Douglas, while on duty and acting under the cover of his authority, made intentional contact with Plaintiff's genitalia on at least two occasions for no penological purpose.  (Compl., Dkt. 1, at 3–4.)  Plaintiff has thus adequately alleged a violation of his Eighth Amendment rights and, by extension, his rights as a pre-trial detainee under the Due Process Clause of the Fourteenth Amendment.  *See Darnell*, 849 F.3d at 29.  Plaintiff may proceed in his § 1983 suit against C.O. Douglas.

### B.      Warden Bastian

Plaintiff alleges that he told Warden Bastian of the assaults he experienced at the hands of C.O. Douglas and that Warden Bastian replied "[You're] playing with fire; now go to work." (Compl., Dkt. 1, at 4.)  The Second Circuit has held that for § 1983 purposes, "the personal

involvement of a supervisory defendant may be shown by evidence that . . . the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Grullon*, 720 F.3d at 139 (citation omitted).  Because Plaintiff alleges he informed Warden Bastian of the assaults he experienced and that Warden Bastian heard, yet verbally refused to act on, that information, his claims against Warden Bastian may proceed. *See, e.g.*, *Harris v. Westchester Cty. Dep't of Corr.*, No. 06-CV-2011 (RJS), 2008 WL 953616, at *10 (S.D.N.Y. Apr. 3, 2008) ("Personal involvement will be found [] where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.").

III.    **Eric M. Taylor Center Medical Staff**

Plaintiff also names "EMTC Medical Staff" as a defendant and claims that he reported the alleged assaults to them, but that they took no action.  Again, it is unclear based upon the complaint whether Plaintiff advances his claim based on his Eighth Amendment rights as a convicted prisoner or his Fourteenth Amendment Due Process rights as a pre-trial detainee.  While a § 1983 claim for the denial of adequate medical care may be brought under either amendment, the test for each claim differs.

Both Eighth Amendment and Due Process claims arising out of inadequate medical care require a demonstration of "deliberate indifference to a prisoner's serious medical needs." *See Darnell*, 849 F.3d at 29 (addressing Fourteenth Amendment Due Process claims); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (discussing the standard for Eighth Amendment claims).  Under the Eighth Amendment analysis, deliberate indifference "includes [both] a subjective component and an objective component." *Hill*, 657 F.3d at 122.  Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death,

degeneration, or extreme pain, exists" and "[s]ubjectively, the official charged with deliberate indifference must act with a sufficiently culpable state of mind." *Id.* This required state of mind involves "a conscious disregard of a substantial risk of serious harm." *Id.* at 123 (quoting *Chance v. Armstrong*, 143 F.3d 550, 553 (2d Cir. 1996)).

While "the first prong of the deliberate indifference inquiry is the same under both amendments[,] . . . the second prong, focusing on *mens rea*, differs." *Singletary v. Russo*, 377 F. Supp. 3d 175, 187 n.2 (E.D.N.Y. 2019). "[D]eliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019).

Plaintiff alleges sufficient facts to satisfy both tests. To satisfy the objective prong of both analyses, Plaintiff alleges that as a result of the assault he experienced, he had "scratches on his butt an [sic] around [his] penis," "minor aches and pains in [his] neck from the choke," and "mental injuries." (Compl., Dkt. 1, at 4–5.) While it is unclear based on the alleged facts whether the deprivation of care Plaintiff faced was "sufficiently serious," *see Hill*, 657 F.3d at 122, the Court construes Plaintiff's *pro se* Complaint liberally and with "special solicitude," and finds that it plausibly alleges injuries sufficient to meet the objective prong, *see Ceara v. Deacon*, 916 F.3d at 213. Similarly, Plaintiff's allegations that the EMTC medical staff, in refusing care to Plaintiff, informed him that he "should be worried about retaliation" (Compl., Dkt. 1, at 4), are sufficient, if proved, to establish the recklessness required by the Due Process Clause, as well as the "conscious disregard of a substantial risk of serious harm" required by the Eighth Amendment, *see Hill*, 657 F.3d at 123.

Accordingly, Plaintiff's claims against the John or Jane Doe Defendants who allegedly refused him care may proceed.  However, the United States Marshals Service will not be able to serve these John or Jane Doe Defendants, who are allegedly EMTC medical staff, without further identifying information.  The Court therefore respectfully requests that the Corporation Counsel for the City of New York attempt to ascertain the full names of the John or Jane Doe EMTC Medical Staff who treated Plaintiff on April 11, 2019.

## CONCLUSION

Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. The New York City Department of Corrections is dismissed as a defendant.  However, in light of Plaintiff's *pro se* status, the Court grants him leave to file an amended complaint adding the City of New York as a defendant and alleging, if applicable, facts establishing whether Warden Bastian was the final policymaking authority for complaints at the Eric M. Taylor Center.

If Plaintiff elects to file an amended complaint, it shall be captioned "AMENDED COMPLAINT" and bear the same docket number as this Order, 20-CV-1676 (PKC) (LB), and must be filed within sixty (60) days from the entry of this Memorandum and Order.

The amended complaint shall replace the original complaint.  That is, the amended complaint must stand on its own without reference to the original complaint.  All of the allegations with regard to Defendants Douglas, Bastian, and the EMTC Medical Staff should also be included in the amended complaint.  No summons shall issue at this time and all further proceedings shall be stayed for sixty (60) days or until Plaintiff files an amended complaint, whichever is earlier.  If submitted, the amended complaint will be reviewed for compliance with this Memorandum and Order and for sufficiency under 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B).  If Plaintiff does not file an amended complaint within the time allowed, the complaint will only proceed as to Defendants Douglas, Bastian, and the EMTC Medical Staff.

Additionally, the Clerk of Court is respectfully directed to send a courtesy copy of this Order to the Special Federal Litigation Division of the Corporation Counsel.  If Corporation Counsel is able to identify the "EMTC Medical Staff" who treated Plaintiff on or about April 11, 2019, Corporation Counsel shall provide this information to the Court within sixty (60) days of the date of this Order.  Once this information is provided, Plaintiff's Complaint shall be deemed amended to reflect the full names of these staff members, and additional summonses shall be issued.

The Court notes that, at this time, it is not ordering the Clerk of Court to prepare a summons against Defendants Douglas and Bastian, nor ordering the United States Marshals Service to serve the Summons and Complaint.  This is to conserve the Court's resources in light of the current COVID-19 pandemic.  The Court shall direct both of those tasks following the deadline for Plaintiff to file an amended complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 5, 2020
Brooklyn, New York

12